UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


TOKOMAN JUTY, JOHN NYEI


V.                                        DOCKET:       23-cv-40022


CITY OF WORCESTER, EDWARD AUGUSTUS,
STEVEN SARGENT, BRENDAN TIVNAN,
NICHOLAS RIGGEIRI, ROCKY DUCTAN,
LISA CARLSON, PATRICK BENNETT,
THOMAS B. DUFFY, ANTHONY LOMBARDOZZI,


## FIRST AMENDED COMPLAINT


The Plaintiffs, Tokoman Juty and John Nyei are black males from Worcester,
Massachusetts that have been stopped by the Worcester Police approximately 100 times
since 2015.   This action stems from 3 specific stops that were documented by Mr. Juty
by video recording.

Worcester Police officers stopped Mr. Juty and Mr. Nyei on November 17 , 2021,
then in an effort to protect themselves the WPD Officers fabricated facts to support an
arrest of Mr. Nyei and Mr. Juty.  On this day at approximately 11:13an, both Plaintiffs
were stopped by Worcester Police Officers as they drove on Main Street.  During the
motor vehicle stop Plaintiff Mr. Juty began video recording the police.  Defendant
Nicholas Riggeiri and Rocky Ductan approached the vehicle. John Nyei was asked if he
had his license on his person and he replied that he did not.  Not having a license in your
possession is not an arrestable offense pursuant to G.L. c. 90 section 11.  Defendant
Nicolas Riggeri then ordered Mr. Nyei out of the car and placed him handcuffs without
incident.  All of this was recorded by Mr. Juty.  Mr. Juty was then ordered out of the
vehicle and was immediately handcuffed.  He was informed that he was not under arrest
by was still handcuffed.  Mr. Juty did not create a situation that would have caused the

officers to fear for their safety that would have allowed him to be handcuffed. Mr. Juty continued to video record the officers as they searched his car without any consent. Mr. Juty voiced his displeasure about the search and about being handcuffed. Officers accused Mr. Juty of obtaining his vehicle by illegal means and degraded Mr. Juty at the side of the road while many cars and pedestrians walked past him. Defendant Anthony Lombardozzi then struck Mr. Juty in the head and chest taking his phone and turning the phone off.

All of the officers submitted false police reports and conspired with each other to continue the fabrication and malicious prosecution of both Mr. Nyei and Mr. Juty. Defendant Ruggieri falsely wrote in his report that Mr. Juty was yelling obscenities at the officers and ordering Mr. Nyei not to produce his license, that Mr. Nyei told him that he would not produce his license and Mr. Nyei refused to be pat frisked pulling his hands away from the car "several times"and resisted by pulling his arms away from the officer several times actively resisting for 30 seconds requiring Defendant Patrick Bennett to assist. The events outlined in Defendant Riggeiri's report were supported by the other named defendants but were the product of a complete fabrication as the arrest and the events leading up to the arrest were captured on video recording by Mr. Juty.

Officer Riggeri ordered other Defendant Officers to remove Mr. Juty from the vehicle. Officer Riggeiri continued his fabrications in his report stating that Mr. Juty was "screaming profanities" and that Mr. Juty was screaming and calling Defendant Ductan "a sell out" and a "nigger". He also alleged that the conduct of both Mr. Juty and Mr. Nyei was extremely volatile and causing a large disturbance on Main Street. Mr. Juty continued to video record the officers while he was handcuffed. Defendants belittled Mr. Juty accusing him of being a drug dealer, asking how he could afford the car that was driven by Mr. Nyei. Defendant Lombardozzi struck Mr. Juty in the head and forcefully removed the phone from Mr. Juty's hands without his consent. Defendant Riggeiri then issued citation T2011408 to Mr. Nyei falsely accusing Mr. Nyei of refusing  refusing to submit (refusing to produce his license) pursuant to G.L. c. 90 section 25; window tint and obstructing traffic.  These false allegations by Defendant Riggeiri and the other defendants led to Mr. Nyei and Mr Juty being charged criminally in Worcester District Court and having to retain the services of an attorney. Motions to dismiss were filed by

defense counsel alleging fabrications by all of the officers but Judge Michael Allard Madaus denied the motion.  Videos were produced to the Worcester County District Attorney's Office showing that the officers fabricated facts in the police reports but the Worcester County District Attorney's Office and the Worcester Police including Defendants Sargent and Augustus refused to dismiss the allegations even after the Defendant produced the videos to show the fabrication by the officers.  The Defendants knew or should have known that the facts were false but continued to prosecute Mr. Juty and Mr. Nyei.

Since 2015, Mr. Juty has been the subject of multiple motor vehicle stops, exit orders, searches and even being handcuffed without any reasonable suspicion or probable cause. It is estimated that Mr. Juty has been stopped by the Worcester Police approximately 100 times since 2015.

On or about April 30, 2020, Mr. Juty was seated with three co-workers on Hamilton Street in Worcester on a lunch break eating their lunch when they were approached by several Worcester Police Officers assigned to the gang unit.   The four individuals, all black males, were on their lunch break eating their lunch. None of the occupants in the vehicle had committed any crime, including Mr. Juty,  and there was no reasonable suspicion to believe that the occupants had committed, were about to commit or were in the process of committing any crime that would warrant a stop, frisk and search of the vehicle.  Mr. Juty video recorded this stop. Officers demanded to know Mr. Juty's name alleging that he looked like someone they had an arrest warrant for but would not disclose the name of the wanted person or even provide a description. Defendant Officers Tivnan and Duffy detained Mr. Juty for approximately 30 minutes subjecting him to a search of his person and vehicle before releasing him.  No record of this stop and search was generated within the Worcester Police Department though it was recorded by Mr. Juty.

The City of Worcester and the Worcester Police, under the direction of Police Chief Steven Sargent, operates units within the Worcester Police Department  that target the Main South Area of Worcester.  A unit called the Neighborhood Response Team, hereinafter referred to as "NRT" along with the Gang and Vice Units target the Main

South area of Worcester which is primarily a poor area of the city consisting of primarily Black and Brown residents.

The Worcester Police have a practice of not maintaining statistical data on all activity of its police officers. WPD do not maintain records or statistics, nor do they require officers to generate reports of stops and searches of minorities unless an arrest or citation is made. The Worcester Police permits officers to target and stop minorities without any fear of retribution. All statistics maintained by the City of Worcester and the Worcester Police Department regarding statistics of race pertaining to stops and searches are grossly flawed as the City of Worcester, Worcester Police, City managers, and the Police Chief do not mandate that statistical data be maintained and permit unlawful searches in an effort to stop drug activity and gun violence while violating the constitutional rights of black and brown residents.

Implemented in 1971, the outdated and predatory War on Drugs initiative was introduced in an effort to curb narcotic trafficking and drug use in our country but has achieved very little in regards to the amount of drugs reaching the American people. While drugs continue to win the War on Drugs, there is one constant loser, communities of color. Although drug usage rates between racial groups remain largely the same, black and brown men are arrested at nearly five times the rate of white men. The terms "Stop and Frisk" and "Driving while black" are well known in communities of color, as violations of their fourth and fourteenth amendment rights are frequent and systematic. Discriminant policies have proven ineffective in combating drug crime, while perpetuating and augmenting racial division in our union. The consistency in which American police departments target black and brown men and women is astonishing and is a prime reason Mr. Nyei and Mr. Juty were stopped and subjected to a search of their person and car. Mr. Juty and Mr. Nyei were stopped for no discernible reason other than an assumption of criminal behavior based on the color of their skin. No reports of record of the stops and searches of Mr. Juty were memorialized with the Worcester Police Department as Mr. Juty was not arrested during the approximately 100 stops since 2015.

Even after realizing their mistake, Worcester City Police Defendants, Chief Steven Sargent, Edward Augustus and the City of Worcester failed to correct the wrong and cleared the Defendants of any wrongdoing including racial profiling, assault and

battery, and an unlawful search. The Worcester Police and the City of Worcester have allowed the practice of stopping individuals of color and allowing illegal searches to be conducted without probable cause or reasonable suspicion. The Worcester Police and the City of Worcester have allowed systemic racial profiling stops to take place without any recourse on the officers that do racially profile residents of this city. The Worcester Police and the City of Worcester have allowed a practice by the Bureau of Professional Standards to conduct investigations that are not impartial and that protect Worcester Police Defendants from prosecution for violations of individuals constitutional rights. The City of Worcester and the Worcester Police do not properly supervisor nor do they monitor the random stops and searches of individuals of color and therefore there is no accountability of its police Defendants.

## PARTIES

1. Plaintiff John Nyei, hereinafter referred to as "Mr. Nyei", resides in Worcester County, Massachusetts. Mr. Nyei is a black male.

2. Plaintiff Tokoman Juty, hereinafter referred to as "Mr. Juty", resides in Worcester County, Massachusetts. Mr. Juty is a black male.

3. Defendant Steven Sargent, hereinafter referred to as "Sargent", was at all pertinent times a duly appointed and sworn Worcester police Chief of the Worcester Police Department employed by the Worcester Police Department, 9-11 Lincoln Street, Worcester, Worcester County, Massachusetts. He is sued in his official and individual capacities.

4. Defendant Nicholas Riggeiri, hereinafter referred to as "Riggeiri", was at all pertinent times a duly appointed and sworn Worcester police officer of the Worcester Police Department employed by the Worcester Police Department, 9-11 Lincoln Street, Worcester, Worcester County, Massachusetts. He is sued in his official and individual capacities.

5. Defendant Edward Augustus, hereinafter referred to as "Augustus", was at all pertinent times the City Manager of the City of Worcester. He is sued in his official and individual capacities. Defendant City of Worcester, hereinafter referred to as "City", is a duly chartered municipal corporation of the Commonwealth of Massachusetts with a place of business abode at 455 Main Street, Worcester, Worcester County, Massachusetts. He is

sued in his official and individual capacities.

6. Defendant Officer Anthony Lombardozzi, hereinafter referred to as "Lombardozzi", was at all pertinent times a duly appointed and sworn Worcester police Officer employed by the Worcester Police Department, 9-11 Lincoln Street, Worcester, Worcester County, Massachusetts. He is sued in his official and individual capacities.

7. Defendant Officer Rocky Ductan, hereinafter referred to as "Ductan", was at all pertinent times a duly appointed and sworn Worcester police Sergeant employed by the Worcester Police Department, 9-11 Lincoln Street, Worcester, Worcester County, Massachusetts. He is sued in his official and individual capacities.

8. Defendant Officer Brendan Tivnan, hereinafter referred to as "Tivnan", was at all pertinent times a duly appointed and sworn Worcester police Defendant employed by the Worcester Police Department, 9-11 Lincoln Street, Worcester, Worcester County, Massachusetts. He is sued in his official and individual capacities.

9. Defendant Officer Thomas B. Duffy, hereinafter referred to as "Duffy", was at all pertinent times a duly appointed and sworn Worcester police Officer employed by the Worcester Police Department, 9-11 Lincoln Street, Worcester, Worcester County, Massachusetts. He is sued in his official and individual capacities.

10. Defendant Patrick Bennett, hereinafter referred to as "Bennett", was at all pertinent times a duly appointed and sworn Worcester police Officer employed by the Worcester Police Department, 9-11 Lincoln Street, Worcester, Worcester County, Massachusetts.

11. Defendant Officer Lisa Carlson, hereinafter referred to as "Carlson", was at all pertinent times a duly appointed and sworn Worcester police Officer employed by the Worcester mayPolice Department, 9-11 Lincoln Street, Worcester, Worcester County, Massachusetts.   She is sued in his official and individual capacities.

## JURISDICTION AND VENUE

12. Plaintiffs bring this civil rights action lawsuit pursuant to 42USC § 1983 to redress the deprivation by Defendants, at all times herein acting under color of state law, of rights, secured to Plaintiff under the Constitution of the United States, including the Fourth and Fourteenth Amendments and the Massachusetts Declaration of Rights (Article 1).

13. Jurisdiction is conferred on this Court by 28 U.S.C. Sections 1343(a)(1) and (a)(3), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. Section 1983. Jurisdiction is also conferred by 28 U.S.C. Section 1331 because claims for relief derive from the Constitution of the United States and the laws of the United States.

14. Venue is properly established in the United States District Court for the Commonwealth of Massachusetts pursuant to 28 U.S.C. Section 1391, in that the events and circumstances herein alleged occurred in the City of Worcester, Worcester County, Massachusetts, and all of the Defendants were either employed in or are residents of Worcester County in the Commonwealth of Massachusetts where jurisdiction is the United States District Court for the District of Massachusetts located in Worcester, Massachusetts.

## FACTUAL BACKGROUND

### As to incident occurring on or about April 30, 2020

15. On or about April 30, 2020, Mr. Juty was stopped by WPD Gang Unit Officers on Hamilton Street in Worcester with 3 other co-workers eating their lunch.

16. All of the occupants in this vehicle were black.

17. Defendants Tivnan and Duffy, who are both white male officers for the City of Worcester,  stopped their unmarked police cruiser in front of the vehicle that Mr. Juty was seated in and blocked the vehicle from leaving the area.

18. Mr. Juty had not committed any criminal offense to warrant a stop by Defendants Duffy and Tivnan.

19. As Mr. Juty and his co-workers ate their lunch they were approached by Defendants Duffy and Tivnan and were wrongfully detained without consent.

20.  Mr. Juty began to record his interaction with the defendant officers.

21. Defendant Duffy and Tivnan told Mr. Juty that he looked like someone that they had an arrest warrant for.

22. Mr. Juty asked to know the wanted person's name and what he looked like but defendants Tivnan and Duffy told Mr. Juty that they do not have to give him that information.

23. Defendant Tivnan told Mr. Juty that he doesn't have to tell him anything because they was the police.

24. Officers demanded that Mr. Juty exit the vehicle and subjected him to a search of his person without his consent.

25. Mr. Juty felt degraded as Defendant Tivnan called Mr. Juty a fool.

26. Defendant Duffy ordered all of the occupants out of the car though none of the other occupants were suspected of any criminal activity.

27. Defendants Tivnan and Duffy opened the door and ordered Mr. Juty out of the car.

28. Defendant Tivnan then physically grabbed Mr. Juty's left arm and pulled him to the rear of the car and conducted a second physical search of Mr. Juty without his consent.

29. Defendant Tivnan said he would keep Mr. Juty detained all day unless he gave him his name.

30. Defendant Duffy opened the driver's side door and ordered the rear passengers to exit the car.

31. Defendant Duffy told Mr. Juty that he was not free to leave until he told them his name.

32. Defendant Tivnan then began searching the interior of the car.

33. Defendant Tivnan told Mr. Juty that he did not need a warrant to search anyone.

34. Mr. Juty was not permitted to finish his lunch as the Defendant officers kept Mr. Juty and the other occupants detained for approximately 30 minutes while the Defendant Officers conducted a search of the vehicle and the search of Mr. Juty's person.

35. Mr. Juty was permitted to leave after 30 minutes of detaining Mr. Juty and searching him without his consent.

36. No record of this stop and search was submitted to the Worcester Police Department.

37. The Worcester Police, under the direction of Defendants Sargent and Augustus, knew or should have known that this stop and search took place but failed to mandate a record of this incident or reprimand its officers for failing to document this encounter with Mr. Juty.

38. Mr. Juty filed a complaint to the Worcester Police Department.

39. On March 3, 2023, the Worcester Police sustained allegations against the officers but not for racial profiling.

40. The Worcester Police, including the Bureau of Professional Standards, Sargent and Augustus protect officers and have a history of not sustaining complaints against officers.

## As to November 17, 2021

41. On November 17, 2021 at approximately 11:13am, Mr. Juty was the passenger in a vehicle operated by Mr. Nyei traveling north on Main Street in the area of 563 Main Street.

42. Mr. Nyei traveled past several officers that were stopped on the side of the roadway placing an individual under arrest.

43. Defendant Riggeiri conducted a registration check on the vehicle operated by Mr. Nyei and discovered that the registration was listed to a white vehicle.

44. The vehicle that Mr. Nyei operated was covered with a car wrap color green.

45. There is no statute that mandates a vehicle owner to change the color of their vehicle if they placed a car wrap on the vehicle.

46. Defendant Riggeiri, a member of the Worcester Police NRT, stopped the vehicle approximately 100 feet from the place Mr. Nyei drove past Defendant Riggeiri.

47. The Worcester Police NRT unit is not required by an unwritten department policy to memorialize or call in their motor vehicle stops or individual searches unless an arrest is made or a citation is generated.

48. The Worcester Police NRT unit has a history of stopping individuals of color and searching them without probable cause or reasonable suspicion.

49. Defendant Riggeiri approached the vehicle and advised Mr. Juty and Mr. Nyei that he stopped them because of the registration did not match the color of the car.

50. Mr. Juty advised Defendant Riggeiri that the color was a car wrap and asked him to open the door to confirm this.

51. Mr. Juty video recorded the interactions with the officers.

52. Mr. Juty produced the registration to Defendant Riggeiri without any confrontation.

53. Defendant Riggeiri asked Mr. Nyei if he had his license on him and Mr. Nyei stated no.

54. Defendant Riggeiri knew or should have known that Mr. Nyei's response was not an arrestable offense but was civil infraction only.

55. Defendant Riggeri then ordered Mr. Nyei out of the vehicle and ordered him to place his hands on the side of the car.

56. Mr. Nyei complied with the orders of Defendant Riggeiri.

57. Defendant Riggeiri then placed Mr. Nyei under arrest.

58. Defendant Bennett assisted with Mr. Nyei's arrest.

59. Defendant Riggeiri then asked Defendants Lombardozzi and Ductan to remove Mr. Juty from the car.

60. There was no probable cause to arrest or detain Mr. Juty.

61. Defendants Ductan and Carlson removed Mr. Juty from the car and placed him in handcuffs without probable cause or reasonable suspicion.

62. Defendants Ductan and Carlson told Mr. Juty that he was not being arrested but placed him in handcuffs.

63. All defendants at this scene knew or should have known that Mr. Juty did not create a situation that caused them to fear for their safety to justify placing Mr. Juty in handcuffs.

64. Defendants Ductan and Lombardozzi accused Mr. Juty of being a drug dealer.

65. Mr. Juty continued to video record the officers though he was handcuffed.

66. Defendant Lombardozzi looked at the camera and then struck Mr. Juty as he recorded the officer.

67. Defendant Lombardozzi then took the phone from Mr. Juty without his consent.

68. Defendants Riggieri, Carlson, Ductan, Lombardozzi, Bennett each submitted false police reports to their supervisors.

69. The WPD including Augustus and Sargent knew or should have known that Mr. Juty's counsel provided video to the Bureau of Professional Standards that shows the officer's wrongfully arrested Mr. Juty and Mr. Nyei.

70. Defendant Riggieri issued a court complaint alleging that Mr. Nyei refused to produce his license pursuant to G.L. c. 90 section 25 but at no time did Mr. Nyei refuse to produce his license.

71. Mr. Nyei stated no when asked by Defendant Riggeiri if he had his license on him which would be a civil infraction under G.L.c. 90 section 11 and would not be arrestable.

72. Defendants Riggeiri, Bennett, Ductan, Carlson and Lombardozzi knew or should have known that this was not an arrestable offense but failed to stop the arrest of Mr. Nyei.

73. Defendant Riggeiri, Carlson, Ductan, Bennett and Lombardozzi had no authority to order Mr. Nyei out of the car as he had not committed any criminal offense nor were his action sufficient to cause the officers to fear for their safety.

74. Defendants Sargent, Augustus, City of Worcester and the Worcester Police knew that video existed that supports the Plaintiff's position that Officers submitted false police reports to their supervisors but failed to act in stopping criminal proceedings.

75. Defendants Sargent, Augustus, City of Worcester and the Worcester Police knew that video existed that supports the Plaintiff's position that Officers submitted false police reports to their supervisors but failed to act or reprimand the officers.

76. Defendant Riggieri falsely alleged in his report that Mr. Juty told Nyei not to produce his license and that Mr. Juty was yelling profanities at him and telling Mr. Nyei not to comply with his orders knowing that this allegation was false.

77. Defendant Riggieri further falsely alleged in his report that Mr. Nyei refused to produce his license knowing that this allegation was false.

78. Defendant Riggieri further falsely alleged in his report removed his hands from the roof and reached for his pants pockets.

79. Mr. Nyei did in fact remove his left hand from roof of the car to place his phone in his pocket but did not do this multiple times as alleged in Riggieri's report.

80. Defendant Riggieri falsely alleged that Mr. Nyei resisted being placed in handcuffs and attempted to pull his arms away from him.

81. Defendant Riggieri falsely alleged in his report that Mr. Juty was screaming profanities at the assisting officers and called Defendant Ductan "a sellout" and a "nigger".

82. Defendant Lombardozzi falsely reported that Mr. Juty resisted in being placed in handcuffs and that he was extremely argumentative.

83. Defendant Lombardozzi falsely reported that Mr. Nyei was argumentative.

84. Defendant Lombardozzi failed to include in his report that he struck Mr. Juty in the head and chest to physically remove the phone from Mr. Juty's hands.

85. Defendant Bennett falsely reported that Mr. Nyei began to tense up and pull away from Defendant Riggieri and Mr. Juty also resisted.

86. Defendant Carlson falsely reported that Mr. Juty was "yelling" at Mr. Nyei telling him not to give his information to Defendant Riggeiri and that he was yelling that he was recording.

87. Defendant Carlson further falsely reported that Mr. Juty refused to exit the vehicle and pulled his arms away from the officers and was yelling profanities and racial slurs until he was escorted to the wagon for transport.

88. The City of Worcester and the Worcester Police do not maintain statistics of stops of minorities that do not amount to an arrest or a court complaint.

89. During a deposition in February of 2023, Captain Kenneth Davenport admitted that officers are not required to document their stops and searches.

90. During this deposition Captain Davenport admitted that due to lack of documentation that the number of stops and searches of people of color that were not documented could be in the 1000s.

91. The City of Worcester, Defendant Sargent, and the Worcester Police Department do not require police Defendants to maintain records of stops that do not amount to an arrest or citation.

92. The City of Worcester, Defendant Sargent, Defendant Augustus, and the Worcester Police Department do not maintain valid statistic of motor vehicle stops and searches of minorities.

93. Worcester Police, Defendant Sargent, Defendant Augustus, and the City of Worcester allow police officers to stop and search individuals of color without probable cause or reasonable suspicion.

94. Worcester Police Defendants are not mandated to report any stops of individuals of color unless an arrest is made or a citation is issued.

95. Worcester Police Defendants are not mandated to report searches of individuals of color unless an arrest is made or a citation is issued.

96. Defendants Augustus, Sargent and the City of Worcester failed to act to correct that racial discrimination and have allowed racial profiling stops to take place within the City of Worcester without any recourse to any officers.

97. Defendants Augustus, Sargent and the City of Worcester knew or should have known that subordinate officers were acting unlawfully, and failed to stop them from targeting

minorities within the city. Instead, Defendants Augustus, Sargent and the City of Worcester actions furthered WPD's customs and policies that manifested deliberate indifference to Plaintiffs' constitutional right to be free from racial discrimination.

98. Worcester Police Officers, particularly the NRT, Vice and Gang Units target individuals based on race because of (1) the false stereotype that being Black and Brown are involved in the drug trade in the Main South area of the City of Worcester.

99. The failure to maintain records and statistics of stops and searches of minorities in the City of Worcester is a policy within the Worcester Police Department so that statistics do not reveal the existence of racism within the City of Worcester.

100.     From 2015 to 2022, Mr. Juty has been subjected to approximately 100 motor vehicle stops by the Worcester Police and other surrounding police departments.

101.     Mr. Juty has been subjected to numerous searches, exit orders, handcuffing, body searches without his consent.  Some of these stops have been recorded by Mr. Juty.


**As to an incident on or about March of 2020**


102.     Mr. Juty was the rear seat passenger of a vehicle that was driven by his brother.

103.     The vehicle was stopped on Main Street in the area of May Street.

104.     Mr. Juty was ordered out of the vehicle and ordered to lay on the ground.

105.     Mr. Juty was handcuffed and searched without probable cause or reasonable suspicion.

106.     The front seat passenger of the vehicle recorded the search of Mr. Juty.

107.     Mr. Juty was left to lay on the ground on the street for approximately 30 minutes while officers searched him and the vehicle.

108.     Mr. Juty's brother is black and the two females were Hispanic.  All of considered minorities.

109.     Mr. Juty was not arrested and was uncuffed after a search was conducted.

110.     None of the officers called in the stop and search to the WPD or their supervisors.

111.     It is unknown who the officers were because no record of this stop exists except for the video that was taken by the passenger.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION 42 U.S.C. §1983

## Violation of Fourth and Fourteenth Amendments to the U.S. Constitution, Unlawful Seizure

## (As to All Defendants)

112.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

113.     The Fourth Amendment to the U.S. Constitution protects "[t]he right of the people . . . against unreasonable searches and seizures."

114.     "The security of one's privacy against arbitrary intrusion by the police which is at the core of the Fourth Amendment—is basic to a free society." Wolf v. Colorado, 338 U.S. 25, 27–28 (1949). Yet, as detailed above, the Defendants have designed and implemented policies that enables officers to arbitrarily to single out, seize, and search minorities without memorializing such activity.

115.     In the course of arbitrary enforcement by the NRT, Gang and Vice Units of the Worcester Police Department, Defendants Augustus, Sargent and the City of Worcester violated the Plaintiffs right under the Fourth Amendment to be free from unreasonable seizures.

116.     Defendants seized the Plaintiffs with neither individualized suspicion or probable cause nor any checks on the Defendants' discretion by the City of Worcester, Defendant Sargent, Defendant Augustus and the Worcester Police.

117.     All of the suspicionless and standardless seizures were unreasonable.

118.     The named Defendants violated Plaintiffs' rights under the Fourth Amendment to be free from unreasonable seizures.

119.     The named Defendants seized the Plaintiffs without any individualized suspicion and without any limitations on the officers' discretion. The seizures were unreasonable.

120.     Defendant Sargent and Augustus were the supervisors of all WPD Officers and were aware that the NRT, Gang and Vice Units of the Worcester Police Department and

the Worcester Police Department as a whole had a practice of unreasonably seizing minorities and subjecting them to unreasonable stops and searches.

121.     Defendants Augustus, Sargent and the City of Worcester knew or should have known that subordinate officers were acting unlawfully, and they failed to correct the constitutional violations.

122.     The constitutional violations committed against the Plaintiff were caused by Worcester Police policies and customs. In particular, the Worcester Police under the direction of Defendant Sargent operated the NRT, Gang, and Vice Units that permitted officers to stop and seize vehicles operated by black or brown drivers within the Main South area along with black and brown pedestrians without any individualized suspicion or limitations on officer discretion.

123.     Defendants Augustus, Sargent, and the City of Worcester knew or should have known that the design and operation of these units violated the Fourth Amendment rights of Plaintiffs and others who were stopped and searched without reasonable suspicion or probable cause.

124.     The City of Worcester and the Worcester Police, along with Defendants Sargent and Augustus failure to provide any written guidelines to constrain officer discretion further manifests the Defendants' deliberate indifference to Plaintiff and other minorities' constitutional rights, particularly given the area of the city that these units targeted.

125.     The Defendants permitted the Plaintiffs to be maliciously prosecuted for allegations that were not true or arrestable and failed to stop the malicious criminal prosecution.

126.      The Defendants conducted the above-described actions under color of state law, in violation of the Plaintiffs' clearly established constitutional rights.

**SECOND CAUSE OF ACTION**

**42 U.S.C. §1983 – Fourth and Fourteenth Amendments to the U.S. Constitution,
Unlawful Search of Mr. Juty and Mr. Nyei
(as to all defendants)**

127.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

128.     Any search conducted by law enforcement must be grounded in probable cause, supported by a warrant or an exception to the warrant requirement, or be based in voluntary consent. "[T]he Fourth and Fourteenth Amendments require that a consent [to a search] not be coerced, by explicit or implicit means, by implied threat or covert force." Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Yet, as described above, Defendants have designed and implemented units within the Worcester Police Department that permitted unlawful stops and searches without any recourse for violating anyone's constitutional rights.

129.     Defendants City of Worcester, Worcester Police, Sargent and Augustus allowed operation of Vice, Gang and NRT units to stop and detain occupants of vehicles or pedestrians of color and detain them without a warrant or any individualized suspicion, retain their IDs and searcj them during questioning.

130.     Such stops and searches made pursuant to that protocol are coercive and unconstitutional.

131.     Mr. Juty  and Mr. Nyei  provided no voluntary consent for the stop and detention along with the search of her person and vehicle.

132.     The search violated Fourth Amendment right to be free from unreasonable searches.

133.     Defendants Sargent, Augustus, City of Worcester and the Worcester Police knew or should have known that subordinate officers were acting unlawfully, and they failed to correct the constitutional violations.

134.     The constitutional violations committed against Mr. Juty  and Mr. Nyei  were caused by Worcester Police policies and customs.

135.     Defendant Sargent operated and allowed units to be operated  within the Worcester Police Department that instructed and permitted officers to stop and search minorities without any individualized suspicion or limitations on officer discretion.

136.     Defendants City of Worcester, through its policymakers Augustus and Sargent, knew or should have known that the design and operation of these units violated the Fourth Amendment rights of Mr. Juty  and Mr. Nyei  and other minorities who were subjected to unreasonable stops and searches.

137.     Defendants City of Worcester, Worcester Police, Augustus, and Sargent's failure to provide any written guidelines to constrain officer discretion further manifests the Defendants' deliberate indifference to Mr. Juty's and Mr. Nyei's and other minorities' constitutional rights.

138.     The Defendants conducted the above-described actions under color of state law, in violation of Mr. Juty's and Mr. Nyei's clearly established constitutional rights.


## THIRD CAUSE OF ACTION

## 42 U.S.C. § 1983 – Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution

## (As to All Defendants)


139.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

140.     The Equal Protection Clause of the Fourteenth Amendment prohibits discriminatory enforcement of the law. Yick Wo v. Hopkins, 118 U.S. 356, 367 (1886). This includes "selective enforcement of the law based on considerations such as race." Whren v. United States, 517 U.S. 806, 813 (1996).

141.     Defendants have designed and implemented units within the Worcester Police Department that uses race to selectively target occupants of cars and pedestrians for interrogations, seizures, and searches.

142.     In the course of executing this discriminatory units within the Worcester Police, Defendants violated the equal protection rights of Plaintiff, a Hispanic woman, when they singled her out on the basis of race for interrogation, seizures, and searches.

143.     Defendants City of Worcester, Worcester Police, Sargent and Augustus knew or should have known that subordinate officers were acting unlawfully, and they failed to correct the constitutional violations.

144.     The equal protection violations committed against Mr. Juty and Mr. Nyei were caused by Worcester Police policies and customs.

145.     Defendants City of Worcester, Worcester Police, Sargent and Augustus operated a units within the Worcester Police that allowed officers to use race as the motivating factor in deciding to stop Plaintiffs suspected of drug activity.

146.     Defendants City of Worcester, Worcester Police, Sargent and Augustus knew or should have known that the NRT, Gang and Vice Units discriminated on the basis of race, yet they took no steps to remedy that discrimination.

147.     Through both their actions and inaction, Defendants City of Worcester, Worcester Police, Sargent and Augustus were deliberately indifferent to Plaintiffs' constitutional rights.

148.     The Defendants conducted the above-described actions under color of state law, in violation of Plaintiff's clearly established constitutional rights.


## FOURTH CAUSE OF ACTION
## 42 U.S.C. § 1983 – Civil Rights Act of 1866, 42 U.S.C. § 1981
## (Against All Defendants)

149.     Plaintiffs incorporate by reference the foregoing paragraphs of this Case Complaint as though fully set forth herein.

150.     Section 1981 of the Civil Rights Act of 1866 guarantees the "full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). It further assures that all persons "shall be subject to like punishment, pains, [and] penalties." 42 U.S.C. § 1981(a). 116. Section 1981 "has broad applicability" in forbidding racial discrimination. Mahone v. Waddle, 564 F.2d 1018, 1028 (3d Cir. 1977). Specifically, it proscribes selective police enforcement on the basis of race. See id.; Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000).

151.      As described above, Defendants' NRT, Vice and Gang Units use race to selectively target minorities for interrogations, seizures, and searches. These units deprive Black and Brown residents of the "full and equal benefit" of the law, and it subjects them to unequal "punishment, pains, [and] penalties." 42 U.S.C. § 1981(a).

152.     Defendants violated the rights of Plaintiff under § 1981 when they singled the Plaintiffs out based on their race for interrogation, seizures, and searches.

153.    Defendants City of Worcester, Worcester Police, Sargent and Augustus Smith knew or should have known that subordinate officers were acting unlawfully, and they failed to correct these civil rights violations.

154.    The violations of Plaintiffs' rights under § 1981 were caused by longstanding Worcester Police policies and customs in allowing stops and searches of minorities. Those policies and customs permitted and encouraged officers to use race when deciding to target minorities, as previously described.

155.    The Defendants conducted the above-described actions under color of state law, in violation of Plaintiffs' clearly established federal rights.

### FIFTH CAUSE OF ACTION

### (Violation of Massachusetts Civil Rights Act: False Arrest
### As to all defendants)

156.    Mr Juty and Mr. Nyei realleges and incorporates each and every allegation contained in the preceding paragraphs.

157.    Mr. Nyei and Mr. Juty were falsely arrested, which acted as a threat, intimidation, or coercion and forced him to give up his fundamental right to be free of unreasonable seizure.

158.    By the acts and omissions described above, Defendants deprived Mr. Juty and Mr. Nyei of their clearly established right to be free of unreasonable seizure as guaranteed under federal and state law in violation of the Massachusetts Civil Rights Act.


### SEVENTH CAUSE OF ACTION

### (Violation of Fourth and Fourteenth Amendments: Excessive Force pursuant to 42 U.S.C. § 1983)

159.    Mr. Nyei and Mr. Juty realleges and incorporates each and every allegation contained in the preceding paragraphs.

160.    At all relevant times, Defendant Officers named in this complaint including the unknown officers were employed by the City of Worcester and acted "under color of state law" within the meaning of 42 U.S.C. § 1983.

161.     In detaining Mr. Nyei and Mr. Juty, Defendant Officers named in this complaint including the unknown officers jointly and in concert used excessive and unreasonable force against them during each of the named incidents.

162.     By using excessive and unreasonable force against Mr. Nyei and Mr. Juty, Defendant Officers named in this complaint including the unknown officers deprived the Plaintiffs' of their clearly established rights under the Fourth and Fourteenth Amendments to be free from excessive and unreasonable force.

163.     As a result of the excessive and unreasonable force that Defendant Officers named in this complaint including the unknown officers used, Mr. Nyei and Mr. Juty suffered damages.

### SIXTH CAUSE OF ACTION
### (Violation of Massachusetts Civil Rights Act: False Arrest
### As to all defendants)

164.     Mr. Nyei and Mr. Juty realleges and incorporates each and every allegation contained in the preceding paragraphs.

165.     Defendant Officers named in this complaint including the unknown officers used excessive force against the Plaintiffs, which acted as a threat, intimidation, or coercion and forced them to give up his fundamental right to be free of unreasonable seizure.

166.     By the acts and omissions described above, Defendant Officers named in this complaint including the unknown officers deprived the Plaintiffs of their right to be free of unreasonable seizure as guaranteed under federal and state law in violation of the Massachusetts Civil Rights Act.

### EIGHTH CAUSE OF ACTION
### 42 U.S.C. § 1983
### MONELL LIABILITY

167.     Plaintiffs incorporate by reference the foregoing paragraphs of this Case Complaint as though fully set forth herein.

168.     At all times herein, Defendant City of Worcester, through its Police

Department, supervisors and/or policymakers, established and/or maintained the following customs, usages, policies and/or practices:

a) Allowing Defendants to stop individuals of color without maintaining a record of such stops.

b) Allowing Defendants to search individuals of color without maintaining a record of such search.

c) Allowing Defendants to beat, shoving, tackle, and brutalize individuals of color during motor vehicle stops while conducting searches without probable cause or reasonable suspicion.

d) Detaining individuals of color and conducting searches without probable cause or reasonable suspicion.

e) Failing to maintain records of stops of individuals of color.

f) Failing to maintain records of searches of individuals of color.

g) Using excessive use of force during motor vehicle stops of individuals of color.

169. In particular, Defendant City of Worcester, acting through its Police Department, supervisors and/or policymakers, were aware that members of the vice unit, NRT unit, and Gang Unit were engaged in a practice of stopping individuals of color and subjecting them to searches without maintaining any record of such stops and searches.

170. In particular, Defendant City of Worcester, acting through its Police Department, supervisors and/or policymakers, allowed Defendants to engage in the practice of conducting random and arbitrary stops of individuals of color, thereby condoning and/or

acquiescing in Defendants Duffy, Tivnan, Powers, FRigon, Coleman, Mitchell, Panarello unconstitutional use of force, arrests, detentions, invasion of First and Fourth Amendment rights, and retaliatory conduct in violation of 42 USC §1981.

171.　　　Each of the aforementioned policies, customs, and/or practices was known to Defendant City of Worcester, and Defendants, each acting in their official capacities, as being highly likely and probable to cause violations of the constitutional rights of members of the public, including but not limited to Plaintiffs herein.

172.　　　The conduct of the individually named Defendants herein were committed pursuant to the customs, policies and/or practices of Defendant City of Worcester.

173.　　　 Each such custom, policy and/or practice, referenced above, was a moving force in the violations of Plaintiffs' constitutional rights, as set forth herein.

174.　　　Worcester Police policymakers including the City Manager of the City of Worcester and Chief Sargent have acted with utter disregard for the constitutional rights of individuals of color by authorizing, both explicitly and implicitly, the use of force upon those stopped by Defendants for the purposes of conducting an illegal search.

175.　　　Worcester Police policymakers including the City Manager of the City of Worcester Augustus and Chief Sargent have acted with utter disregard for the constitutional rights of individuals of color by failing to properly train, supervise, condemn, and discipline Worcester Police Defendants regarding appropriate use of force during a motor vehicle stop　and by failing to rectify the Worcester Police unconstitutional custom of stopping individuals of color and conducting unreasonable searches without probable cause or reasonable suspicion.

176.　　　Worcester Police policymakers including the City Manager of the City of

Worcester Augustus and Chief Sargent have acted with utter disregard for the constitutional rights of individuals of color by failing to discipline Defendants that conduct improper stops and searches of individuals of color and failing to maintain proper statistics regarding stops and searches of individuals of color.

177.     Worcester Police policymakers including the City Manager of the City of Worcester Augustus and Chief Sargent have acted with utter disregard for the constitutional rights of individuals of color by failing to discipline Defendants that knowingly submit false police reports or not requiring officers to memorialize stops and searches of individuals of color.

178.     Worcester Police policymakers including the City Manager of the City of Worcester and Chief Sargent have acted with utter disregard for the constitutional rights of individuals of color by ordering the BOPS division to conduct an impartial investigation when an Defendant is alleged to have violated a department policy.

179.     As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have sustained injuries and damages including, physical injury, mental anguish and emotional distress, humiliation and embarrassment.


## NINTH CAUSE OF ACTION
## CIVIL CONSPIRARY
### (42 U.S.C. Section 1983)
### (Against all defendants)

180.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

181. Defendants failed to maintain records of stops, detentions, searches of minorities unless there was an arrest or a court complaint filed.

182. No record of the stops made on the Mr. Juty were documented because the City of Worcester, Augustus and Sargent permitted unlawful stops to take place without requiring documentation of these stops.

183. Immediately following the arrest of Mr. Juty and Mr. Nyei on November 14, 2021, Officers generated false police reports to justify the arrest.

184. Defendants Tivnan and Duffy by agreement failed to generate a report of their interaction with Mr. Juty in April of 2020 and did this with the assent of their supervisors including Sargent and Augustus.

185. At all relevant times, Defendants have acted—and continue to act— under color of state law.

186. In doing the acts complained of herein, defendants acted under color of law to deprive plaintiffs of certain constitutionally protected rights including, but not limited to:

   a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth amendment to the United States Constitution,

   b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth amendments to the United States Constitution,

   c. The right to equal protection of the laws, as guaranteed by the Fourteenth amendment to the United States Constitution, and

   d. The right to be free from interference with the zone of privacy, as protected by the Fourth Amendment to the United States Constitution.


**<u>TENTH CAUSE OF ACTION</u>**

**Assault and Battery**

**(as to Defendants Lombardozzi, Ductan, Bennett, Riggieri, Carlson)**


187. Plaintiffs incorporate by reference the foregoing paragraphs of this Case Complaint as though fully set forth herein.

188.     At all relevant times, Defendants have acted—and continue to act— under color of state law.

189.     Named defendants placed plaintiffs in immediate fear of death and severe bodily harm by assaulting and battering her without any just provocation or cause. Said defendants' conduct was neither privileged nor justified under statute or common law.

190.     At no time did the Plaintiff authorize or consent Defendants Carlson, Lombardozzi and Ductan to touch his person.

## ELEVENTH CAUSE OF ACTION

### (False Arrest and Imprisonment)

### As to all defendants

191.     Plaintiffs incorporate by reference the foregoing paragraphs of this Case Complaint as though fully set forth herein.

192.     Named defendants falsely stopped, detained and searched the Plaintiffs for a prolonged period of time without just provocation or probable cause. Plaintiff had not committed any crime, and there was no basis upon which defendant Defendants could have reasonably believed that plaintiff had committed a crime.

193.     All defendants failed to take action to prevent false imprisonment and detention.

## TWELTH CAUSE OF ACTION

### Filing of false police reports

### as to Defendants Riggieri, Ductan, Lombardozzi, Carlson and Bennett

194.     Plaintiff incorporates by reference the foregoing paragraphs of this Case Complaint as though fully set forth herein.

195. Upon realizing their mistake, defendants conspired to falsify official reports to conceal their wrongdoing the named defendants provided false reports in order justify the unlawful stop, detention, and search of the plaintiff and her vehicle.

## FOURTEENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against all Defendants)

196. Plaintiff incorporates by reference the foregoing paragraphs of this Case Complaint as though fully set forth herein.

197. Defendants' wrongful acts were outrageous, and were done with reckless disregard of the probability that Plaintiffs would suffer emotional distress, knowing that Plaintiffs were present when the conduct occurred.

198. As a result, Plaintiff has suffered severe emotional distress, and Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress.

199. Defendants' wrongful acts were willful, oppressive, fraudulent and/or malicious thereby entitling Plaintiff to punitive damages against all defendants save and except for the City of Worcester.

## THIRTEENTH CAUSE OF ACTION
### 42 U.S.C. § 1983 42 U.S.C. § 1983 –
### Malicious Prosecution
### (as to defendants Riggieir, Carlson, Ductan, Bennett, Lombardozzi, Sargent, Augustus, City of Worcester)

200. Plaintiff incorporates by reference the foregoing paragraphs of this Case Complaint as though fully set forth herein.

201. In the manner described above, Defendants, acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiffs of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and despite knowing that Plaintiffs were innocent.

202. In doing so, Defendants caused Plaintiffs to be unreasonably seized without probable cause and deprived them of their liberty, in violation of Plaintiffs' rights secured by the Fourth and Fourteenth Amendments. The false judicial proceedings against Plaintiff were instituted and continued maliciously, resulting in injury.

203. Defendants also deprived Plaintiffs of fair state criminal proceedings, including the chance to defend himself during those proceedings, resulting in a deprivation of his liberty, and Massachusetts law does not provide an adequate state-law tort remedy to redress that harm.

204. In addition, Defendants subjected Plaintiffs to arbitrary governmental action that shocks the conscience in that Plaintiffs was deliberately and intentionally framed for a crime of which they were totally innocent, through Defendants' fabrication of police reports.

205. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' clear innocence.

206. As a result of Defendants' misconduct described in this Count, Plaintiffs suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

207. Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Worcester, and by Defendants who were final policymakers for Defendant City of Worcester, in the manner more fully described above.

### FIFTEENTH CAUSE OF ACTION
### COUNT II 42 U.S.C. § 1983 – Arrest without Probable Cause
### (as to Defendants Riggieri, Carlson, Ductan, Lombardozzi, Bennett)

208. Plaintiff incorporates by reference the foregoing paragraphs of this Case Complaint as though fully set forth herein.

209. Defendants arrested Plaintiffs based on the false evidence that they fabricated.

210. Defendants did not have probable cause to perform the arrest on Plaintiffs.

211.    Plaintiffs were harmed by Defendants arrest without probable cause.

212.    The Worcester Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Worcester, and by Defendants who were final policymakers for Defendant City of Worcester, in the manner more fully described above.

## SIXTEENTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – Failure to Intervene
### (As to all defendants)

213.    Plaintiff incorporates by reference the foregoing paragraphs of this Case Complaint as though fully set forth herein.

214.    In the manner described above, during the constitutional violations described herein, one or more Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so.

215.    Defendants Augustus and Sargent failed to intervene and allowed the criminal charges to proceed knowing or should of known that the charges were false on the November 14, 2021 incident.

216.    As a result of Defendants' failure to intervene to prevent the violation of Plaintiffs' constitutional rights, Plaintiffs suffered pain and injury, as well as emotional distress. These Defendants had ample, reasonable opportunities to prevent this harm but failed to do so.

217.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, reckless indifference to the rights of others, and in total disregard of the truth and Plaintiffs' clear innocence.

218.    As a result of Defendants' misconduct described in this Count, Plaintiffs suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

219.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Worcester, and by Defendants who were final policymakers for Defendant City of Worcester, in the manner more fully described above.

PRAYER FOR RELIEF

Plaintiff prays for judgment as follows:

    A.  For general and special damages in an amount to be proven at trial;

    B.  For punitive damages

    C.  For damages to compensate Plaintiffs for their emotional distress;

    D.  For reasonable attorneys' fees and costs; and

    E.  For such other and further relief as the Court deems just and proper.


**.JURY DEMAND**


    Plaintiff hereby demands a trial by jury of all issues so triable.


                Respectfully submitted,

                By Tokomowan Juty and John Nyei

                By their attorney,


                /s/ Joseph F. Hennessey

                Joseph Hennessey
                BBO #669552
                11 Foster Street, Suite 200
                Worcester, MA 01608
                Tel. (508) 881-9500
                Email:  Joe@hennesseylawoffice.com


Dated: March 4, 2023